UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PET FOOD EXPRESS LIMITED, | No. C 09-01483 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| ROYAL CANIN USA INC., | **Re: Plaintiff's Application for a Writ of Attachment** |
| Defendant. / | |

Plaintiff Pet Food Express Ltd. ("Pet Food") brings this action against defendant Royal Canin USA Inc. ("Royal") for breach of contract. Now before the court is plaintiff's application for a right-to-attach order and issuance of a writ of attachment pursuant to Federal Rule of Civil Procedure 64.

BACKGROUND[1]

Plaintiff Pet Food, a California corporation, owns and operates a chain of at least 34 specialty pet food outlets, located for the most part in Northern California.

Defendant Royal, a Delaware corporation, formerly known as Pet Products Plus, Inc. ("PPP"), is a supplier and manufacturer of pet food, including Royal Canin Feline Nutrition and Canine Health Nutrition. Royal is a corporation under the umbrella of Royal Canin, S.A., which is headquartered in Aimargues, France, and has been owned by the multinational corporation Mars, Inc., which is headquartered in Virginia, since 2002.

On February 6, 2004, Pet Food and Royal executed an agreement that modified terms inherent in a prior contract between Pet Food and PPP. The two companies had been working together since 1997, in an effort to help Royal break into the Bay Area petfood market through promotional and marketing ventures. As part of the new agreement, Royal appointed Pet Food to act as a "market developer" within the defined territory for Royal's products. The appointment was to continue until December 31, 2017, subject to early termination by Royal with 30 days notice if: (1) Pet Food fails to perform its duties and obligations and Pet Food does not cure any such default within the 30 days; (2) Pet Food's purchases of Royal products does not exceed the amount of products purchased the previous year; or (3) Pet Food's ownership changes in a manner that adversely affects Royal's business within the territory.

Under the agreement, Pet Food's duties and obligations included placing Royal's products in a mutually agreed upon "prime selling location" at each Pet Food outlet, promoting the products as part of Pet Food's "recommended foods" category, sending Pet Food staff to Royal sales meetings and seminars to receive training on Royal products' advantages and characteristics, carrying as many of Royal's products at each outlet as it reasonably could, cooperating with Royal to establish and implement sales promotions to increase consumer awareness of the products, keeping up with its payments to Royal, and using commercially reasonable efforts to increase the products' sales.

Under the agreement, Royal's duties and obligations included providing Pet Food with an adequate supply of products to allow Pet Food to meet its duties and obligations, inviting Pet Food personnel to meetings or seminars to be trained, paying Pet Food a promotional allowance of 15% of the net invoice amount as a deduction against each invoice "[i]n consideration for Pet Food's undertakings," and paying Pet Food an annual Market Development Allowance ("MDA") in the amount of 5% of the aggregate annual dollar volume of products shipped by Royal into the territory or outside the territory where such products are sold at retail outlets within the territory based on Royal's wholesale price for the products.

Both parties performed their obligations without problem until the end of 2008. But in early 2009, Royal says it determined that the invoice deductions and MDA payments it had been making to Pet Food since 2004 were illegal and unenforceable under federal and state law, and ceased

2

making such payments, including those owed for 2008. Pet Food alleges that Royal wanted it to sign a new contract, but when Pet Food refused, Royal repudiated the 2004 agreement. On March 26, 2009, Pet Food filed suit against Royal in the Superior Court for Alameda County for breach and repudiation of the agreement. Pet Food sought $300,000 in damages, representing its estimate of the 2008 MDA payments Royal refused to make. On April 6, 2009, Pet Food filed this action, also alleging breach and repudiation of the agreement. Pet Food sought damages of "at least $320,000." Royal removed the state case to federal court, and the two cases were related and consolidated pursuant to 28 U.S.C. section 1332. Also on April 6, Pet Food applied for a prejudgment attachment, contending that it was entitled to attach Royal's assets in the total amount of the claim.

On May 21, 2009, Royal filed its answer to the complaint, along with an antitrust counterclaim seeking a declaration that the agreement is illegal and unenforceable, for rescission of the agreement and for restitution of payments already made. In particular, Royal contended that both the promotional allowance and the MDA payments were "secret payment[s] or allowance of rebates, refunds, commissions, . . . in the form of money," or are "unearned discounts," in whole or in part, prohibited under the California Business and Professions Code ("CBP") section 17045, that they constitute "secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions," that they give Pet Food an unfair advantage over its competitors to the detriment of such competitors and thereby "tending to destroy competition" which makes the agreement "an illegal contract and no recovery thereon shall be had." See CBP §§ 17045, 17051. Royal further contended that the promotional allowance and the MDA payments constitute "unlawful, unfair or fraudulent business act[s] or practice[s]" under CBP section 17200, and that enforcement of the agreement would be contrary to California's public policy.

Royal also alleged that to the extent that the promotional allowance and the MDA payments could be said to have been earned, the agreement would require Royal to pay Pet Food consideration that had not been made available "on proportionally equal terms to all other customers competing in the distribution" of Royal products, in violation of section 2(d) of the Robinson-Patman Act, 15 U.S.C. section 13(d). But to the extent that any portions of the promotional allowance and the MDA

3

payments were not earned, the agreement would give rise to price discrimination in favor of Pet Food, in violation of section 2(a) of 15 U.S.C. section 13(a).

Pet Food answered the counterclaim and denied the agreement is illegal. Pet Food also amended its application for a prejudgment writ, and sought to attach $19,545,720, which it claims is the total amount Pet Food would have earned in promotional allowances and MDA payments had Royal not allegedly breached and repudiated the agreement that extended to 2017.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 64, state law provides all remedies when property is to be seized for the purpose of securing satisfaction of a judgment, unless a federal statute governs. The California Attachment Law, Cal. Code Civ. Proc. ("CCP") § 482.010, et seq., which the parties agree applies to Pet Food's application, is subject to strict construction. Epstein v. Abrams, 57 Cal. App. 4th 1159, 1167-68 (Cal. App. 1997).

A prejudgment attachment may be issued only if the claim sued upon is: (1) for money based upon a contract, express or implied; (2) of a fixed or readily ascertainable amount not less than $500; (3) either unsecured or secured by personal property, not real property (including fixtures); and (4) commercial in nature. CCP § 483.010; Goldstein v. Barak Const., 164 Cal. App. 4th 845, 852 (Cal. App. 2008)

As a predicate for issuing a right to attach order under California law, the court must also make the following findings:

(1) The claim upon which the attachment is based is one upon which an attachment may be issued.

(2) The plaintiff has established the probable validity of the claim upon which the attachment is based.

(3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.

(4) The amount to be secured by the attachment is greater than zero.

CCP § 484.090(a).

"The application shall be supported by an affidavit showing that the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based." Id. §

4

484.030.  To oppose a right to attach order, a defendant must give notice of his objection "accompanied by an affidavit supporting any factual issues raised and points and authorities supporting any legal issues raised." Id. § 484.060(a).

As set forth above, plaintiffs must establish "the probable validity of the claim upon which the attachment is based." CCP § 484.090(a)(2); see also Bank of America v. Salinas Nissan, Inc., 207 Cal. App. 3d 260, 271 (Cal. App. 1989). "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." CCP § 481.190; see also Kemp Bros. Construction, Inc. v. Titan Electric Corp., 146 Cal. App. 4th 1474, 1476 (Cal. App. 2007).

The requirements for a hearing on an application for a writ of attachment are as follows:

> The order will be issued if the court finds that the plaintiff's claim is probably valid and the other requirements for issuing the order are established.  The hearing is not for the purpose of determining whether the claim is actually valid.  The determination of actual validity of the claim will be made in subsequent proceedings in the action and will not be affected by the decisions at the hearing on the application for the order.

CCP § 484.050(b).

The court's determinations are to be made upon the basis of the pleadings and other papers in the record. Goldstein, 164 Cal. App. 4th at 852, citing CCP § 484.090(d).

DISCUSSION

This court looks to California state law for remedies when property is to be seized for the purpose of securing satisfaction of a judgment, unless a federal statute governs. Fed. R. Civ. P. 64. No such federal statute is at play in the instant case. Thus, California's Code of Civil Procedure section 483.010 governs.

Under this section, a prejudgment attachment may be issued only if the claim sued upon is for money based upon a contract, of a fixed or readily ascertainable amount not less than $500, either unsecured or secured by personal property as opposed to real property, and commercial in nature. Goldstein, 164 Cal. App. 4th at 845. These provisions are strictly construed against the applicant. Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., 112 F. Supp. 2d 1178, 1181 (C.D.

5

1  Cal. 2000). The applicant also bears the burden of proving each element by a preponderance of the
2  evidence. See Bank of Am. Nat'l Trust & Sav. Ass'n v. Salinas Nissan, Inc., 207 Cal. App. 3d 260,
3  273 (Cal. App. 1989); Loeb & Loeb v. Beverly Glen Music, Inc., 166 Cal. App. 3d 1110, 1116 (Cal.
4  App. 1985)

5        Royal's breach and repudiation of contract claim clearly satisfies three of these four
6  requirements. However, whether the amount is "fixed or readily ascertainable" is a different matter.
7  When Pet Food filed its state court claim, it estimated the alleged breach of contract to be worth
8  $300,000. Then, in its federal action, which was eventually related and consolidated with the state
9  claim, Pet Food alleged the same breach was worth between $310,000 and $320,000. When Pet
10 Food first applied for this right-to-attach order on May 13, 2009, it again modified its estimate and
11 stated the amount to be secured by the attachment was $340,000, including $20,000 in estimated
12 costs. On May 18, Pet Food filed an amended motion for writ of attachment, stating the amount to
13 be secured by the attachment at $19,575,000, including some $30,000 in estimated costs. Pet Food
14 vice-president Mark Witriol, in four paragraphs, explains how he arrived at this amount. Witriol
15 Dec., Docket No. 30, ¶¶ 2-6. He used Pet Food's total sales by year of Royal products from 2004 to
16 2007, deducting the cost of any Return to Vendor, or nonconforming products, and multiplied that
17 by the 5% MDA payment as per the Pet Food-Royal agreement.
18 He then concluded:

19     Based upon these historical sales and rebate figures and anticipating a continued sales growth of 30%/year which reflectives [sic] past sales growth, the lost rebates under the contract not
20     reduced to present value is $19,545,720[.]

21 Witriol Dec. ¶ 6.

22       Pet Food asserted on oral argument that it need only quantify a lost profits calculation in a
23 "reasonable amount." Even under Pet Food's own standard, its moving papers fall short. Witriol's
24 calculations, if they can be called that, in reaching such an exorbitant figure are highly speculative.
25 They make assumptions about, *inter alia*, the market, Pet Food's performance, the opening of new
26 stores in the future, etc. Beyond that, making an estimated projection of Pet Food's future earnings
27 for the sale of Royal products based on an assumed 30% sales growth rate every year for the next
28 eight years is palpably unreasonable, especially when Royal states its annual sales rates from 2004 to

6

2007 were 27%, 18%, 19% and 16%, respectively, never once hitting 30%. See Def.'s Opposition, Docket No. 33, at 9. To predict a company's future earnings could grow by such impressive bounds is one thing, but to state that those profits are certain, fixed or even readily ascertainable is completely another. Pet Food does not meet the threshold requirement for this court to even consider issuing a writ of attachment.

Even if it did, California law permits prejudgment attachments under very limited circumstances as "a provisional remedy to aid in the collection of a money demand by seizure of property in advance of trial and judgment." Kemp Bros. Constr., Inc. v. Titan Elec. Corp., 146 Cal. App. 4th 1474, 1476 (Cal. App. 2007). California courts recognize that it is "a harsh remedy because it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated." Martin v. Aboyan, 148 Cal. App. 3d 826, 831 (Cal. App. 1983).

This is why as a predicate for issuing a right to attach order, the court must also find as noted above that the plaintiff has established the *probable validity of the claim* upon which the attachment is based, among other requirements. See CCP § 484.090(a). In its answer to Pet Food's complaint, Royal asserts the affirmative defense of illegality, arguing that the agreement between the two parties is illegal and unenforceable, and, as such, Pet Food cannot establish the probable validity of its underlying claim because the agreement cannot be enforced.

To obtain a right-to-attach order, a plaintiff must demonstrate that "it is more likely than not that [he] will obtain a judgment against the defendant on the claim." CCP § 481.190. "In determining the probable validity . . . the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." Loeb, 166 Cal. App. 3d at 1120. Royal contends that the promotional allowance and the MDA payments are in contravention of both California and federal law. Under CBP section 17045, Royal contends that both types of payments are "secret payment[s] or allowance[s] of rebates, refunds, commissions, or unearned discounts," and that they were "secretly extend[ed] to certain purchasers . . . [and] not extended to all purchasers purchasing upon like terms and conditions." CBP § 17045. For Pet Food to establish probable validity—which is based on a preponderance of the evidence standard—of its

7

breach of contract claim, it must show that Royal's illegality defense is less than fifty percent likely to succeed. Pet Food has provided no support for this.

CONCLUSION

For the foregoing reasons, Pet Food's application for a right-to-attach order and issuance of a writ of attachment is DENIED.

The court also reiterates its oral ruling of July 13, 2009, enjoining Pet Food from filing an action against Royal in any other court. Pursuant to the court's July 15, 2009 order, granting defendant's administrative motion to file a request for judicial notice of plaintiff's state court complaint of July 7, 2009, the court is astounded by Pet Food's filing of a third lawsuit. Pet Food wastes court resources by having multiple separate lawsuits pending in state and federal court, based on the same facts and claims at issue in the present case. Pet Food is ordered to either amend the instant complaint or seek leave from this court before filing in any other court a new or amended complaint touching upon the contract or issues in this action.

IT IS SO ORDERED.

Dated: July 27, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Unless otherwise noted, the facts are drawn from the parties moving papers and the complaint.