**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                        NORTHERN DISTRICT OF CALIFORNIA

7

8  PET FOOD EXPRESS LIMITED,                  No. C-09-1483 EMC

9              Plaintiff,

                                             **ORDER GRANTING PLAINTIFF'S**
10       v.                                   **MOTION TO ALTER JUDGMENT**

11  ROYAL CANIN USA, INC.,                    **(Docket No. 160)**

12              Defendant.
    _____/

13

14

15       Pending before the Court is Plaintiff Pet Food Express's (PFE) motion to alter judgment by

16  adding prejudgment interest in the amount of $177,092.  Docket Nos. 160, 182.[1]  Defendant Royal

17  Canin USA (RC) objects to the motion, arguing that the basis for the interest is uncertain.  For the

18  reasons set forth below, the Court **GRANTS** the motion.

19                          **I.    DISCUSSION**

20  A.    Plaintiff's Motion - Prejudgment Interest

21       Plaintiff's motion seeks to add prejudgment interest in the amount of $177,092, based on lost

22  MDA payments and lost PA discount payments post-breach.  Docket Nos. 160, 182.  The parties had

23  previously agreed to address this issue post-trial.  Moore Decl. ¶ 2.  Plaintiff seeks interest on the

24  2008, 2009, and 2010 MDA, and the 2009 and 2010 PA payments.  It contends that each source of

25  interest is supported by evidence presented at trial: specifically, the 2008 MDA payment is

26

27

       [1]  PFE's initial motion requested $187,019 in interest; however, the parties have
28  subsequently stipulated that, should the Court grant the motion, the proper figure is $177,092. *See*
    Docket No. 182.

**United States District Court**

For the Northern District of California

1   supported by TX 15 and Mr. Flanigan's testimony, the 2009 MDA payment is supported by TX 101

2   and Defendant's closing argument, the 2010 MDA payment is supported by TX 101, and the 2009

3   and 2010 PA payments are supported by Mr. Witriol's testimony (though he did not specifically

4   break the numbers down into these categories).  Mot. at 2-3.

5           1.      Legal Standard

6           Section 3287 of the California Civil Code provides:

7                   (a) Every person who is entitled to recover damages certain, or
                    capable of being made certain by calculation, and the right to recover
8                   which is vested in him upon a particular day, is entitled also to recover
                    interest thereon from that day, except during such time as the debtor is
9                   prevented by law, or by the act of the creditor from paying the debt.
                    This section is applicable to recovery of damages and interest from
10                  any such debtor, including the state or any county, city, city and
                    county, municipal corporation, public district, public agency, or any
11                  political subdivision of the state.

12                  (b) Every person who is entitled under any judgment to receive
                    damages based upon a cause of action in contract where the claim was
13                  unliquidated, may also recover interest thereon from a date prior to the
                    entry of judgment as the court may, in its discretion, fix, but in no
14                  event earlier than the date the action was filed.

15  Cal. Civ. Code § 3287 (2010).  "If the damages are certain or capable of being made certain,

16  prejudgment interest pursuant to subdivision (a) of Civil Code section 3287 is a matter of right."

17  *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.*, 90 Cal. App.4th 64, 70 (2001).

18          The parties dispute whether the damages here were "certain or capable of being made

19  certain" within the meaning of § 3287(a).  Plaintiff contends that they were and thus it is entitled to

20  prejudgment interest as a matter of right.  The certainty requirement of subdivision (a) codifies the

21  "prevailing general rule that prejudgment interest is not allowed on unliquidated obligations." *Lewis*

22  *C. Nelson & Sons v. Clovis Unified Sch. Dist.*, 90 Cal. App. 4th 64, 69 (2001).  "The usual

23  prohibition against such interest is based upon the rationale that it is unreasonable to expect a

24  defendant to pay a debt before he or she becomes aware of it or is able to compute its amount." *Id.*

25  (citations omitted).

26          The California Supreme Court has explained, "[d]amages are deemed certain or capable of

27  being made certain within the provisions of subdivision (a) of section 3287 where there is essentially

28  no dispute between the parties concerning the basis of computation of damages if any are

                                                    2

1 recoverable but where their dispute centers on the issue of liability giving rise to damage." *Leff v.*

2 *Gunter*, 33 Cal. 3d 508, 519 (1983) (citation omitted). By contrast, "[t]he statute does not authorize

3 prejudgment interest where the amount of damage, as opposed to the determination of liability,

4 'depends upon a judicial determination based upon conflicting evidence and is not ascertainable

5 from truthful data supplied by the claimant to his debtor.'" *Fireman's Fund Ins. Co. v. Allstate Ins.*

6 *Co.*, 234 Cal.App.3d 1154, 1173 (1991). Hence, "the test for recovery of prejudgment interest under

7 § 3287(a) is whether the *defendant* actually knows the amount owed or from reasonably available

8 information could have computed that amount." *Duale v. Mercedes-Benz USA, LLC*, 148 Cal. App.

9 4th 718, 728-29 (2007) (emphasis in original) (citations, quotation marks, and brackets omitted). If

10 "the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is

11 not appropriate." *Id.* (emphasis in original). The policy underlying the certainty requirement of §

12 3287(a) is that in situations "where the defendant could have timely paid that amount and has thus

13 deprived the plaintiff of the economic benefit of those funds, the defendant should therefore

14 compensate with appropriate interest." *Wisper Corp. v. California Commercial Bank*, 49 Cal. App.

15 4th 948, 962 (1996).

16 However, that there is some dispute over damages does not necessarily preclude prejudgment

17 interest. In *Leff*, for example, the California Supreme Court explained that even a dispute as to the

18 amount of damages does not necessarily prevent those damages from being made certain by

19 calculation "where the amount of recovery closely approximated plaintiff's claims." 33 Cal.3d at

20 520. In addition, where the amount of damages is calculable "mechanically, on the basis of

21 uncontested and conceded evidence," the plaintiff is entitled to prejudgment interest. *Id.* (reversing

22 the trial court's denial of prejudgment interest where the value of the underlying construction project

23 upon its completion, as well as "the balance due on the indebtedness to which it was subject, and the

24 extent of plaintiff's interest in the original joint venture" were uncontradicted).

25 ///

26 ///

27 ///

28 ///

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

2.      Certainty of Damages

According to Plaintiff, the damages for which it seeks prejudgment interest–the 2008-2010 MDA and PA payments–were "ascertainable and capable of computation" based on trial exhibits and testimony.  Mot. at 2-3.  Defendant disagrees, arguing that the damages to which PFE seeks to attach interest "are neither certain nor capable of computation from the evidence submitted."  Opp. at 1.  RC points to the need for a three-day trial to resolve damages as support for its argument, and contends that "there is no basis to conclude with any certainty that what the jury awarded was meant to include or to reflect these amounts."  Opp. at 2.

In the instant case, while it is true that many portions of the damages at issue were disputed and uncertain, those are largely not the damages for which Plaintiff seeks interest in this motion.  Indeed, the formula for calculating damages has never been in dispute.  It has always been a percentage of sales (15% of RC sales to PFE for the PA, and 5% of RC sales in the Territory for the MDA).  Rather, the inputs for those formulas have been in dispute because the parties disagreed over how to calculate any *future* damages to which PFE might be entitled.  For example, RC claimed that PFE may not perform under the contract and, even if it did, RC contended it would be impossible to reliably predict the quantity of sales, size of the Territory, etc., so as to calculate future damages.

However, none of these disputes affect the damages for which PFE seeks prejudgment interest.  Rather, the basis for prejudgment interest is the MDA and PA payments already owed from 2008-2010, based on data in RC's possession.  By the date on which each payment was due, there was no dispute as to what the amount of that payment should be or how it would be calculated.  *See* § 3287(a) (interest begins accruing on the day the right to recovery vests).  Rather, there was only a dispute as to whether RC was obligated to make such a payment (*i.e.*, whether the contract was still in effect).  This is more akin to a dispute over liability than a dispute over the calculation of damages.  *See Leff*, 33 Cal. 3d at 519 (interest is appropriate when the parties agree on how to calculate damages but disagree on whether they are owed).

Moreover, where damage claims are additive and separable, as here, there is no barrier to recovering interest on those separately calculable damages even though other damages may be too

4

**United States District Court**

For the Northern District of California

1    uncertain to warrant prejudgment interest. *See Stonebrae, L.P. v. Toll Bros., Inc.*, No. C–08–0221

2    EMC, 2011 WL 1334444, at \*22 n.12 (N.D. Cal. Apr. 7, 2011) (distinguishing alternative claims

3    from "claims seeking to impose separate elements of damages which can be aggregated" and noting

4    that the latter are subject to prejudgment interest) (citing *Al-Husry v. Nilsen Farms Mini-Market,*

5    *Inc.*, 25 Cal. App. 4th 641, 647-50 (1994); *Olvey v. Errotabere Ranches*, No. CV-F-06-653

6    OWW/SMS, 2008 U.S. Dist. LEXIS 49140, at \*9 (E.D. Cal. June 17, 2008) ("The amount of land

7    rent was certain and capable of calculation; at issue during the trial was liability. With regard to

8    Plaintiff's claim for compensatory damages for the use of water, that claim is separate from the land

9    rent claim and does not render the land rent claim uncertain.")) (additional citations omitted).

10        Applying this standard to PFE's specific requests, the 2008 MDA payment of $309, 894 is

11   the clearest example of damages for which PFE is entitled to interest. This payment was certain and

12   readily ascertainable because RC actually wrote such a check and offered it to PFE before retracting

13   their offer. It is nearly identical to PFE's request for damages in its original complaint, *see* Docket

14   No. 1 ¶¶ 8, 12, a factor courts have found weighs in favor of awarding interest. *See Leff*, 33 Cal.3d

15   at 520. Moreover, RC's principal (Mr. Flanigan) confirmed the sum and admitted that he owed it to

16   PFE, RT 435:9; 437:8-14, RC's counsel conceded in closing argument that the "2008 MDA payment

17   is not in doubt," RT 525:12-13, and RC currently adopts the figure in its motion to alter judgment,

18   JMOL Mot. at 2. Thus, at the least, prejudgment interest is appropriate based on the 2008 MDA as

19   it is clear that "the defendant could have timely paid that amount and has thus deprived the plaintiff

20   of the economic benefit of those funds." *Wisper Corp.*, 49 Cal. App. 4th at 962.

21        The 2009 and 2010 MDA payments are similarly certain, as both RC employee Rudolph and

22   RC counsel confirmed that they were calculable from Defendant's own exhibit 101. *See* RT 477:15-

23   18 ("Q: Now, looking at just this chart, just Exhibit 101, would you be able to calculate what the

24   [MDA] to [PFE] should have been for each year? A: Yes. It should be 5 percent of the total

25   column."); 534:9-11 ("We know that the 2009 MDA was on the order of $255,000."); 538:4-7

26   (confirming that PFE's Mr. Witriol had no dispute with the numbers from Exhibit 101 that Defense

27   counsel showed to him). That exhibit confirms a 2009 and 2010 MDA of $253,511 and $271,251,

28   respectively. *See* TX 101; Docket No. 182 at 2 (parties stipulate that these amounts are the MDA

United States District Court

For the Northern District of California

1    "amounts awarded"). Indeed, RC submitted a motion *in limine* before trial arguing that Plaintiff's

2    witnesses should not be permitted to testify as to projected data for 2009 and 2010 because "actual

3    numbers" were available for those years – the same numbers PFE now uses to request prejudgment

4    interest. *See* Docket No. 86 at 16. Mr. Rudolph also testified at trial that it was RC's responsibility

5    to track its sales within the Territory so that it could calculate the MDA owed to PFE, thus

6    confirming that the data was in RC's possession. *See* RT 473:14-24.

7         That the parties disputed the accuracy of certain calculations at trial does not, as Defendant

8    posits, render the damages uncertain. *See* Opp. at 3 (noting that Plaintiff's counsel attempted to

9    undermine the accuracy of Exhibit 101). While there were concerns over potential typos or

10   mathematical errors in Defendant's exhibit, there was no dispute between the parties as to the source

11   of the numbers or how to calculate them. Thus, any uncertainty in the amount was cured by PFE

12   adopting RC's numbers. *See Levy-Zentner Co. v. Southern Pac. Transp. Co.*, 74 Cal. App. 3d 762,

13   801 & n.35 (1977) ("[B]y seeking the lowest of two estimates submitted, Levy-Zentner rendered its

14   undisputed damages certain as to Southern Pacific, as required by the statute . . . As the cost of

15   repairs necessarily would be one of the two estimated figures, Levy-Zentner's damages were certain

16   to be at least $99,051.66, or the lower figure."); *KGM Harvesting Co. v. Fresh Network*, 36 Cal.

17   App. 4th 376, 391 (1995) ("The fact that an error of approximately 5.5 percent was made in the

18   original calculations does not make the damages uncertain."); *Marine Terminals Corp v. Paceco,*

19   *Inc.*, 145 Cal.App.3d 991, 996-98 (1983) (finding that dispute over accuracy of an invoice does not

20   render damages uncertain, and collecting cases). The relevant question is whether RC knew how to

21   calculate the payments owed to PFE, and RC certainly knew how to calculate the numbers in its own

22   exhibit.

23        Finally, the PA payments for 2009 and 2010 are eligible for interest as well, as they are

24   similarly based on data known to RC and calculable based on a method dictated by the contract and

25   uncontested by the parties. While PFE's witness (Mr. Witriol) did not provide the final calculations

26   at issue here, he did testify as to the total PFE purchases of RC products in 2009 post-breach and in

27   2010, which are the bases for the PA payments for those years. *See* RT 308:13-19. RC did not

28   dispute these numbers before the jury, and the parties have since stipulated that the 2009 PA was

**United States District Court**
For the Northern District of California

1    $237,771, and the 2010 PA was $167,847.  Docket No. 182 at 2.[2]  Indeed, RC uses the complete

2    2009-2011 PA calculation of $635,263 presented to the jury as a basis for its motion to alter

3    judgment, contending that the evidence supported no more than this amount in PA damages.  *See*

4    JMOL Mot. at 2.  Plaintiff's request for interest on a smaller subset of this sum is thus necessarily

5    undisputed.  *See Levy-Zentner*, 74 Cal. App. 3d at 801 n.35.

6         RC contends that because the jury rendered a general verdict encompassing more than the

7    damages at issue here, this dooms PFE's request.  However, RC cites no caselaw in support of this

8    theory.[3]  The fact that RC uses most of the data at issue here (with the exception of the 2009 and

9    2010 MDA) in its motion to alter judgment belies its contention that the jury could not have

10   incorporated these figures into its verdict.  Moreover, the fact that the jury awarded future damages

11   for both the PA and MDA necessarily indicates that it determined PFE was entitled to performance

12   under the contract for 2008-2010 and beyond.  PFE's request for prejudgment interest reflects only

13   the certain, readily calculable portion of those damages.

14        Accordingly, the Court **GRANTS** Plaintiff's motion to alter judgment.

15

16   ────────────────

17   [2] RC did raise a concern--outside the jury's presence--that Mr. Witriol may have used
     incorrect data, noting that the data Mr. Witriol provided as 2010 purchases, $2,108,892, was the
18   same number listed in RC's records on Exhibit 101 for 2009.  *See* RT 387:19-389:15.  However, as
     noted above, that there may have been clerical errors on both sides–indeed, PFE counsel raised
19   concerns about the accuracy of RC's numbers in Exhibit 101–does not render the damages uncertain
     as discussed above.  *See Harvesting Co.*, 36 Cal. App. 4th at 391.  The fact remains that these
20   numbers are accessible and calculable from information within the parties' possession.  In addition,
     RC concedes in its JMOL reply that "there was evidence before the jury supporting an award of
21   $635,263 in damages for lost PA."  Reply at 2 n.3.  Moreover, the parties' subsequent stipulation
     indicates that PFE for purposes of the instant motion has adopted the lower of the disputed numbers
22   for both years, thus curing any dispute as to the accuracy of any calculations.  *See* Docket No. 182 at
     2 (listing the parties' stipulation to use a 2009 PA of $237,771, which corresponds to Mr. Witriol's
23   lower 2009 post-breach PA figures, and a 2010 PA of $167,847, which corresponds to RC's lower
     2010 figures from TX 101).

24   [3] RC attempts to equate cases in which certain portions of the formula for determining
     payments owed are uncertain, *see* Opp. at 3 (citing *Chesapeake Industries, Inc. v. Togova*
25   *Enterprises, Inc.*, 149 Cal. App. 3d 901, 913-14 (1983) (finding damages uncertain where party only
     had parts of the data necessary to calculate its monthly payment); *Wisper Corp. v. California*
26   *Commerce Bank*, 49 Cal. App. 4th 948, 961-62 (1996) (damages uncertain in comparative
     negligence case because defendant's relative responsibility for the harm had to be determined by
27   jury)), with the instant case, in which certain entire damages are certain and others are uncertain
     (*i.e.*, damages for 2009 are known, while damages for 2014 are unknown).  These cases are
28   inapposite.

United States District Court

For the Northern District of California

## II.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to alter judgment by adding prejudgment interest.  Per the parties' stipulation as to the amounts in question, the Court awards PFE prejudgment interest in the amount of $177,092.  *See* Docket No. 182 at 2:16.

This Order disposes of Docket No. 160.


IT IS SO ORDERED.


Dated:  December 8, 2011

_____
EDWARD M. CHEN
United States District Judge